**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LORSIV TECHNOLOGIES, INC., an Illinois corporation,** <br> **380 Ogden Ave** <br> **Lisle, IL 60532** <br><br> **-and-** <br><br> **THILAK REDDY ARE,** <br> **6308 Windcrest Dr.** <br> **Plano, TX 75024** <br><br> **Plaintiffs** <br><br> **Against** <br><br> **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, an agency of the United States,** <br> **20 Massachusetts Ave NW,** <br> **Washington DC 20529** <br><br> **Defendant** | **Case No.** <br><br> **COMPLAINT** |

I. INTRODUCTION

1. This is an action brought under the Administrative Procedure Act seeking to have the United States Citizenship and Immigration Services' decision denying LORSIV TECHNOLOGIES, INC. (Lorsiv)'s petition to classify THILAK REDDY ARE as a specialty occupation worker held unlawful and set aside. As will be shown the decision was remarkably incompetent, in that it was not only premised upon an error of law, but completely ignored much critical evidence and, most unforgivably, grossly mischaracterized one key piece of evidence in coming to its erroneous and appallingly arbitrary conclusions.

1

## II. PLAINTIFFS

2.   Lorsiv Technologies, Inc. was established in the year 2013 to improve and implement technology solutions to advance its clients' productivity and competence and route parts of their operations on their behalf. It offers a range of services, from legacy data warehousing, conventional data warehousing, on-demand data warehousing to the latest data warehousing in the cloud. Its expertise includes implementation of diversified database systems and platforms including Oracle, SAP, Microsoft, IBM and Sybase. It caters to customers from Healthcare, Pharma, Insurance, Financial, Retail, Utilities, Telecom, and Manufacturing domains. Its customers include Fortune 500 corporations and also mid-market customers that have data-critical businesses.

3. Thilak Reddy Are is a native and citizen of India currently residing in Texas. He holds a Master of Science degree from Long Island University in New York, as well as a Bachelor of Pharmacy from Rajiv Gandhi University of Health Sciences, Bengaluru, Karnataka, India and has over 7 years of experience in the field of Information Technology. His education and experience, taken as a whole, has been found by an Associate Professor of Computer Information Systems to be the equivalent of a Bachelor's degree in Computer Science from an accredited U.S. university.

## III. DEFENDANT

4. The defendant, United States Citizenship and Immigration Services (USCIS), is an agency of the United States residing in the District of Columbia.

IV. JURISDICTION

5. This being a civil action against the United States arising under the Immigration and Nationality Act, 8 U.S.C. § 1101, *et. seq.,* and the Administrative Procedure Act, 5 U.S.C. § 701, *et. seq.,* both laws of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

V. STANDING

6. Lorsiv has a legally protected interest in a decision by the USCIS on its petition upon Mr. Are's behalf which is not arbitrary and capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2), and the invasion of this right has caused it concrete and particularized injury in that, as a result of this invasion, Lorsiv can no longer employ Mr. Are, and, therefore, cannot derive the revenue it previously received from the sale of his services to its client;  there is a causal connection between the injury-in-fact and the defendant's challenged behavior in that it is precisely the defendant's denial of Lorsiv's petition that has caused Lorsiv to sustain this loss and it is reasonably certain that the injury-in-fact will be redressed by a favorable ruling in that an approval of Lorsiv's petition will authorize Mr. Are to work for it. Accordingly, Lorsiv has standing to complain of the agency's decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

7. Mr. Are likewise has a legally protected interest in a decision by the USCIS on Lorsiv's petition upon his behalf which is not arbitrary, capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2), and this right has been invaded in that the improper denial of Lorsiv's petition has caused him concrete and particularized injury in that as a result of this denial he can no longer be employed by Lorsiv and so cannot derive the revenue he previously

received from his employment and, further this denial has deprived him of an extension of his legal status in the U.S. and so, if not corrected, will soon compel him to depart to avoid one or more of the following

a. Being placed in removal proceedings and subject to detention;

b. Becoming inadmissible to the U.S. for three years if he departs the U.S. over 180 days after the unfavorable decision complained of in this action and/or

c. Becoming inadmissible to the U.S. for 10 years if he departs the U.S. in a year or more from the unfavorable decision.

8. There is a causal connection between the injury-in-fact and the defendant's challenged behavior in that it is precisely the defendant's denial of Lorsiv's petition and Mr. Are's application for extension of stay  which caused him to cease working for Lorsiv and will soon require him to depart the country to avoid the mentioned detriments. It is reasonably certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable Mr. Are to resume his lawful employment and lawful status as an H-1 B employed by  Lorsiv. Accordingly, Mr. Are has standing to complain of this action. *Lujan, supra.*

## VI. VENUE

9.  Pursuant to 28 U.S.C. § 1391(e), venue is proper in the District of Columbia, where the defendant resides.

## VII. BRIEF STATEMENT OF PROCEDURAL HISTORY
## AND LEGAL BACKGROUND

10. On or shortly after April 25, 2018 the plaintiff, Lorsiv, filed a Petition for a Nonimmigrant Worker (Form I-129), with U.S. Citizenship and Immigration Services (USCIS), seeking to classify Thilak Reddy Are, as a temporary worker in a specialty occupation (H-1B) under section 101(a)(l5)(H)(i)(b) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(15)(H)(i)(B), and, concurrently, to extend his H-1B  status in the U.S. Its petition contained an offer to  Mr. Are of a job entitled "Network Engineer".

11. Filed either in support of this petition or in response to a request for additional evidence were documents showing that Lorsiv had the legal right to control Mr. Are's work activities, including letters so affirming from Lorsiv, McKesson Corporation (the company which would be the ultimate recipient of Mr. Are's services) and World Wide Technologies, Inc (the company which contracted Mr. Are's services to McKesson).

12. Also so filed was an evaluation of Mr. Are's education and work experience from Associate Professor of Computer Information Systems Gregory Silver, which he found  to be the equivalent of a Bachelor's degree in Computer Science from an accredited U.S. university.

13. Nevertheless, on May 18, 2019, the USCIS issued a decision denying Lorsiv's petition upon Mr. Are's behalf, as well as his application to extend his nonimmigrant H-1B status.

14. The sole bases for the decision   was that Lorsiv had supposedly failed to establish that it had an employer-employee relationship with Mr. Are and that he qualified to provides services in the Network Engineer specialty occupation. This action ensued.

### VIII. CAUSE OF ACTION

15. 5 U.S.C. § 706 provides in material part that: "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an Agency action. The reviewing court shall--

…

(2)  hold unlawful and set aside Agency action, findings, and conclusions found to be--

(A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

### COUNT I

THE AGENCY'S FINDNG THAT LORSIV DID NOT SHOW THAT IT HAD AN EMPLOYER-EMPLOYEE RELATIONSHIP WITH THE BENEFICIARY WAS NOT IN ACCORDANCE WITH LAW IN THAT IT WAS PREMISED UPON THE CONCLUSION THAT AN EMPLOYER MUST ACTUALLY CONTROL AN EMPLOYEE'S WORK ACTIVITIES TO HAVE SUCH A RELATIONSHIP, WHEN IN FACT AN EMPLOYER NEED ONLY HAVE THE RIGHT TO SUCH CONTROL

16. The decision cited only one reason for concluding that Lorsiv did not establish that it had an employer-employee relationship with Mr. Are and that is "The record still does not contain. contractual evidence of an agreement between the ultimate mid-vendor and the end client, and USCIS is unable to determine your relationship with the end client and any availability of specialty occupation work." Decision at 3.

17. The stated explanation for why this contract was needed demonstrates that the agency's decision was premised upon an error of law.

18. The Decision stated that "As explained in the RFE, the record does not indicate who the beneficiary reports to and how the beneficiary's work at the end client is monitored and supervised… ." However, this evidence is not relevant to the question of who has the *right* to control Mr. Are's work activities. Rather, it would show only who *actually* controlled it.

19. There are few propositions more firmly settled in the field of labor law than that the right of control, not actual control, is the gravamen of an employer-employee relationship. See, e.g.,. *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003), *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). The right to control the beneficiary is different from actual control. An employer may have the right to control the beneficiary's job-related duties and yet not exercise actual control over each function performed by that beneficiary. *See e.g. Dovell v. Arundel Supply Corp*., 124 U.S. App. D.C. 89, 361 F.2d 543, 545 (1966) ("The vital element which negatives such independence, in the relation between employer and employee, is the right to control the employee, not only as to the final result, but in the performance of the task itself. And, it is the right to control, not control or supervision itself, which is most important. (Footnote omitted.)" *quoting Grace v. Magruder*, 80 U.S. App. D.C. 53, 148 F.2d 679, 681 (1945))[1]; *Avis Rent A Car Sys., Inc. v. United States*, 503 F.2d 423, 425 n.1 (2d Cir. 1974) ; *Trent v. Atl. City Elec*. Co., 334 F.2d 847, 863 (3d Cir. 1964), *Weber v. Commissioner*, 60 F.3d 1104, 1110 (4th Cir. 1995); *Breaux & Daigle, Inc. v. United States,* 900 F.2d 49, 50 (5th Cir. 1990);

---

[1] "The rule in the District of Columbia is that where a conflict of law as to a particular issue exists the law of the jurisdiction with the more substantial interest in the resolution of the issue is applied. The rule in the District of Columbia is that where a conflict of law as to a particular issue exists the law of the jurisdiction with the more substantial interest in the resolution of the issue is applied. *Dovell* , 361 F.2d at 544. Here both the other circuits which might have an interest in this issue, the 7th, where Lorsiv is based, and the 5th, where Mr. Are lives and where the services were to be performed, likewise have held that right to control, rather than actual control itself, is dispositive of an employee-employee relationship. *See infra*.

*NLRB v. Cement Transp., Inc.*, 490 F.2d 1024, 1027 (6th Cir. 1974), *Sargent v. Commissioner*, 929 F.2d 1252, 1253 (8th Cir. 1991); *Chin v. United States*, 57 F.3d 722, 725 (9th Cir. 1995), *Jones v. Goodson*, 121 F.2d 176, 177 (10th Cir. 1941).

20. That an employer-employee relationship is demonstrate through the the right to control, rather than actual control, is also official USCIS policy.  USCIS Adjudicator's Field Manual (AFM) § Chapter 31.3 nt.1. ("The right to control the beneficiary is different from actual control. An employer may have the right to control the beneficiary's job-related duties and yet not exercise actual control over each function performed by that beneficiary. The employer-employee relationship hinges on the right to control the beneficiary.").

21. "Policy material is binding on all USCIS officers and must be adhered to unless and until revised, rescinded or superseded by law, regulation or subsequent policy, either specifically or by application of more recent policy material. …Examples of policy materials are: Field and Administrative Manuals" AFR 3.4.

22. Thus, the AFM, being an administrative manual, is a policy material binding on all USCIS officers.

23. This is also the only reasonable interpretation of  8 CFR § 214.2(h)(4)(ii)(2) which defines a "United States employer" as one who has an employer-employee relationship with respect to employees under this part, as indicated by the fact that it **may** hire, pay, fire, supervise, or otherwise control the work of any such employee ....". (emphasis added).

24. The fact that an employer "may" control the work of an employee (rather than "must"[2]) demonstrates that, consistent with *Clackamas, Darden,* the decisions of at least 9 circuit courts of appeal and the USCIS's own AFM, it is only the right to control and not the actual exercise of the same which is determinative of an employer-employee relationship.  However, "who the beneficiary reports to and how the beneficiary's work at the end client is monitored and supervised" is a question which is relevant only to the issue of who actually controls Mr. Are's work and has no relevance whatsoever to who has the right to control it.

25. Accordingly, inasmuch as the USCIS's decision is premised upon its claim that Lorsiv failed to establish to the agency's satisfaction that it would actually control Mr. Are's activities at the worksite, the finding that Lorsiv has failed to establish that it has an employer-employee relationship with Mr. Are is not in accordance with law.

COUNT II

TO THE EXTENT THAT THE USCIS PURPRTED TO DETERMINE WHETHER LORSIV
HAD ESTABLISHED ITS RIGHT TO CONTROL MR. ARE'S WORK ACTIVITIES, IT
ARBITRARILY IGNORED ALL OF THE EXTENSIVE EVIDENCE WHICH LORSIV
PROFFERED TO SHOW THAT IT HAD

---

[2] The Oxford Online Dictionary offers several definitions of "may", only one of which is remotely applicable here: "Used to ask for or to give permission.
*'you may confirm my identity with your Case Officer, if you wish'*
*'may I ask a few questions?'*
…
*'None of the text or images from this site may be reproduced in whole or part without written permission.'* Accordingly there is no circumstances in which the word "may" can convey the idea that an employer **must** control his employ, but rather shows that he merely has permission to do – that is that he has the right to control, whether he chooses to exercise it or not. Or perhaps to cite a more familiar example, the fact that a court "may" grant oral argument in a case certainly doesn't oblige it to do so.

26. But even if one were to take the USCIS at its word and assume, despite the glaring evidence to the contrary, that  the agency really was trying to determine who had the *right* to control Mr. Are's work, and not merely who was *actually* controlling it, this decision would still be unlawful inasmuch as it was patently arbitrary.

27. First, the contract between the "ultimate mid-vendor", World Wide Technology, Inc. (WWT), and the "end client ", McKesson Corporation, could not be of any conceivable relevance to Lorsiv's right to control the work of Mr. Are inasmuch as WWT had no legal right over Mr. Are's work activities, and therefore was entirely unable to give McKesson, or anyone else, that right to control.

28.  To the contrary, in its letter of February 11, 2019, WWT expressly stated that:

WWT/McKesson Company have no employment relationship with Mr. Thilak as his employer Lorsiv Technologies is sole responsible for hire, fire, salary, benefits, assignment/Reassignment of additional work, performance Appraisal and training needed to perform his job duties at the work site. Further, WWT/ McKesson Company do not have discretionary decision-making power and his employer {Lorsiv Technologies) retains the right of control over Mr. Thilak's scope of work, source of instrumentalities and tools.

29. Therefore, inasmuch as WWT did not itself possess the legal right to control Mr. Are's work, it follows directly that it could not validly assign such a right to  McKesson and, accordingly, their contract could not have any conceivable relevance to the question of whether Lorsiv had the right to control Mr. Are's work.

30. Accordingly, far from examining the relevant factors as it was required, AT&T, Inc. v. FCC, 886 F.3d 1236, 1246 (D.C. Cir. 2018) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)), the

agency instead based its entire decision on this issue on Lorsiv's failure to produce a document which not only was apparently not under its control, but, in any event, entirely irrelevant to the issue of whether it had the right to control Mr. Are's work activities.

31. Further, and just as egregiously, the agency entirely ignored all of the evidence presented by Lorsiv that in fact it did have the right to control Mr. A's work activities, including:

a. Lorsiv's letter of April 25, 2019 in which it stated that:

Mr. Are's employment will be controlled by Lorsiv Technologies, Inc. Specifically, Lorsiv Technologies, Inc., will supervise the activities of Mr. Are by means of a project manager employed by Lorsiv Technologies, Inc. The below described factors further confirm that Lorsiv Technologies, Inc., will be the employer of Mr. Are in as much as Lorsiv Technologies, Inc., will control the manner and means by which Mr. Are performs services for our client:[3] …
Lorsiv Technologies, Inc., exercises their authority to appraise performance, promote, demote, transfer laterally, approve authorization for leave of absence or terminate Mr. Are's employment.
• Lorsiv Technologies, Inc., treats Mr. Are as its employee in its business and personnel records, including USCIS Form I-9.
• Lorsiv Technologies, Inc., issues Mr. Are regular pay checks and required tax reporting forms (including W-2).
• Lorsiv Technologies, Inc., is responsible for the Worker's Compensation coverage and liability insurance coverage for any error and omission with respect to the services provided by Mr. Are, at the client's site.
• Lorsiv Technologies, Inc., offers employee benefits (such as health insurance, sick leave, vacations, etc.) to Mr. Are.
• Lorsiv Technologies, Inc., has the right to assign additional work to Mr. Are and/or to change the work assignment.
• Lorsiv Technologies, Inc., makes employer contributions and withholds and will pay employee contributions on behalf of Mr. Are for Federal income tax purposes.[4]
Lorsiv Technologies, Inc., solicits regular feedback from the project manager about the work product of Mr. Are, and will include that feedback in regular performance evaluations for Mr. Are.

---

[3]R33

[4] R34

• Mr. Are is required to communicate on a regular basis with Lorsiv Technologies, Inc., in terms of hours worked, status of assignment, performance feedback, and similar matters through regular communication (phone calls and e-mails) to the project manager[5]

b. The letter of McKesson, the "end client" whose contract with WWT the USCIS attached such great store, in which the company advised that:

McKesson Corporation will not have the ability to assign Thilak Reddy to a different employer or client. McKesson is the end-client receiving the services of Thilak Reddy. As the end client, we will  also not have the responsibility of dictating how Thilak Reddy performs his duties.

While at McKesson Corporation's office, Thilak Reddy will report directly to Samba Movva, Director at Lorsiv Technologies. and he will remain under the control and overall supervision of his own employer. Lorsiv Technologies will be responsible for paying the salary, benefits and expenses of Thllak Reddy, and he will remain an employee of Lorsiv Technologies. Lorsiv Technologies will control and supervise ThilakReddy's overall work.[6]

c. WWT's letter note above also affirming Lorsiv's right to control Mr. Are's work activities,

32. It was precisely the failure of the USCIS to consider such evidence which led Judge Contreras of this Court to recently conclude that it was likely that the plaintiffs would prevail in their claim that the USCIS acted arbitrarily in finding a lack of employer-employee relationship in *Stellar IT Sols., Inc. v. United States Citizenship & Immigration Servs*., 2018 U.S. Dist. LEXIS 196284, 2018 WL 6047413. There the court observed that:

The first basis for the denial of the petition was that **Stellar IT** had failed to establish an employer-employee relationship with Mr. Krishnamurthy, as indicated by the ability to "hire pay, fire, supervise, or otherwise *control*" him. Compl., Ex. E at 2 (quoting 8 C.F.R. § 214.2(h)(4)(ii)(2)). According to USCIS, **Stellar IT** did "not appear to . . . have the right to assign, control, review, or supervise [Mr. Krishnamurthy's] work," and its role appeared limited to "the functions of a payroll administrator." *Id.* at 3.
In reaching that conclusion, however, USCIS overlooked critical evidence submitted by **Stellar IT**. Multiple pieces of evidence indicated that the company would in fact have the "legal right . . . to control the manner and means in which [Mr. Krishnamurthy's] work [was]  performed," Compl., Ex. D at 29 (Q&A document), that the company would "have

---

[5] R35

[6] R64

the right to assign additional duties" to him, *id.* at 60 (position description document), and that the company's president would supervise and review his work product through status emails and weekly phone calls, *id.* at 28 (Q&A document). The letter submitted by the end-client, Honda North America, confirmed these facts as well; that letter stated, among other things, that "[o]nly [**Stellar IT**] [would] have the legal right to control the work of Kartik Krishnamurthy as well as the right to assign Kartik Krishnamurthy to this, or any work site location, and . . . the legal right to control his activities." *Id.* at 33. USCIS failed to even acknowledge any of this evidence in its written decision.

Id. at *18-19

Accordingly, the Stellar IT court concluded that:

All told, then, in light of the record that **Stellar IT** ultimately assembled, [*23] Plaintiffs are likely to succeed in showing that it was not reasonable for USCIS to conclude that **Stellar IT** had "not provided sufficient documentary evidence to demonstrate how [it] [would] supervise or oversee" Mr. Krishnamurthy's "work while he performe[d] his duties at the client's site." Compl., Ex. E at 3. USCIS was free to take issue with the substance, credibility, or weight of the evidence submitted and explain why it took such issue, but the agency was not permitted to pretend the evidence did not exist. *See, e.g., Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018) ("[A]n agency cannot ignore evidence contradicting its position." (quoting *Butte Cty. v. Hogen*, 613 F.3d 190, 194, 392 U.S. App. D.C. 25 (D.C. Cir. 2010)). Because USCIS overlooked significant parts of the record, Plaintiffs are likely to succeed on their claim that the agency acted arbitrarily and capriciously in determining that no employment relationship existed.

Id. at *22-23

33. Here likewise the USCIS was free to take issue with the substance, credibility or weight of the evidence submitted by Lorsiv as to why it had the legal right to control Mr. Are's work activities and thus had an employer employee relationship with him, but it was not permitted to pretend the evidence did not exist.

34. Because here, as in Stellar IT, the USCIS overlooked significant parts of the record, the agency acted arbitrarily and capriciously in determining that no employer-employee relationship existed.

### COUNT III

THE AGENCY ACTED ARBITRARILY IN FALSELY CLAIMING THAT DR. SILVER'S EVALUTION DID NOT SPECIFY THAT MR. ARE HAD THE EQUIVALENT OF A DEGREE IN ANY PARTICULAR TOPIC WHEN IN FACT THE EVALUATION EXPRESSLY STATED TWICE THAT HE HAD THE EQUIVALENT OF A BACHELOR'S DEGREE IN COMPUTER SCIENCE

35. The second basis for denial here was, if possible, even more arbitrary then the determination that Lorsiv lacked an employer-employee relationship with Mr. Are. Indeed, the word arbitrary hardly seems strong enough to describe how the agency did not simply disregard, but in fact grossly mischaracterized, the controlling evidence on this issue.

36. The agency also denied this petition because it determined that Mr. Are was not qualified to perform services in the Network Engineer specialty occupation. However, Lorsiv stated, and the USCIS did not dispute, that the job offered to Mr. Are required at least a bachelors degree in computer science or a closely related field (McKesson, the "end client", stated that the job required a bachelors degree [or the equivalent] in computer science or computer information systems).

37. Further, Lorsiv provided USCIS with an "Expert Opinion Evaluation of Academics and Work Experience" by Dr. Gregory Silver, Associate Professor of Computer Information Systems at Anderson University, pertaining to Mr. Are's credentials.

38. Dr. Silver's evaluation announced (in all capital letters on the first page of his evaluation) that Mr. Are had the equivalent of a "BACHELORS DEGREE IN COMPUTER SCIENCE".

39. The evaluation then concluded again on page 4 that "Mr. Reddy has attained the equivalent of at least a bachelors degree in computer science from an accredited institution of higher education in the United States"

40. To its credit, the agency did not ignore Dr. Silver's evaluation.

41. Unfortunately, to its discredit, it doesn't appear to have read it either.

42. If someone in that agency had read Dr. Silver's evaluation, it is impossible to understand how the USCIS could've come to the conclusion that "Although the opinion letter states that the beneficiary has the equivalent of a U.S. bachelor's degree, the letter does not specify that the degree is in any particular topic.".

43. If an agency may not ignore evidence contradicting its conclusions, it certainly may not completely misconstrue it either.

44. The agency's false assertion that Dr. Silver did not conclude that Mr. Are had the equivalent of a bachelor's degree in any particular topic is directly contradicted by the indisputable fact that the professor did conclude that Mr. Are had the equivalent of the required bachelors degree in computer science in education and experience.

45. Accordingly, the agency's conclusion that Mr. Are was not qualified to provide services in the specialty occupation was also arbitrary and capricious.

Inasmuch as the USCIS's conclusion that Lorsiv did not have an employer employee relationship with Mr. Are is both not in accordance with law and arbitrary and it's finding that Lorsiv did not provide evidence that Mr. Are qualified for the offered specialty occupation was at least equally

arbitrary, the agency's decision denying Lorsiv's petition upon Mr. Are's behalf is unlawful and should be set aside.

Respectfully submitted this   29th  day of May, 2019


*s/Michael E. Piston*
Michael E. Piston (MI 002)
Attorney for the Plaintiffs
225 Broadway, Ste 307
New York, NY 10007
646-845-9895